**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JESSE JAMES PAGAN, LILYANN
DAVILA, and JACK COWAN, *on behalf of*
*themselves and all similarly situated persons*,

        Plaintiffs,

    v.

FANEUIL, INC.,

        Defendant.

**Civil Action No. 3:22-cv-297**

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iv

I.      INTRODUCTION ................................................................................................2

II.     CASE SUMMARY...............................................................................................4

     A.     The Data Incident ................................................................................... 4

     B.     Procedural Posture ................................................................................. 5

     C.     History of Negotiations........................................................................... 6

III.    SUMMARY OF SETTLEMENT ........................................................................6

     A.     Settlement Benefits ................................................................................. 7

        1.   Documented Ordinary Expenses and Lost Time Reimbursement................... 7

        2.   Documented Extraordinary Expense Reimbursement ...................................... 8

        3.   Cash Payment for California Subclass Members............................................. 8

        4.   Identity Theft Protection Services ................................................................. 8

        5.   Security-Related Improvements.................................................................... 10

     B.     Class Notice and Settlement Administration ....................................... 10

     C.     Attorneys' Fees and Expenses ............................................................. 12

     D.     Service Awards to Named Plaintiffs..................................................... 12

     E.     Release ................................................................................................. 12

IV.     LEGAL AUTHORITY ......................................................................................13

V.      THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS
       FOR CERTIFICATION.....................................................................................14

     A.     The Rule 23(a) Requirements Are Satisfied ........................................ 15

     B.     The Rule 23(b)(3) Requirements Are Satisfied ................................... 17

VI.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND DIRECT
       NOTICE TO THE SETTLEMENT CLASS......................................................19

     A.     The Class Was Adequately Represented ............................................. 20

B.    The Proposed Settlement Was Negotiated at Arm's Length ............................... 21

C.    The Relief is Fair, Reasonable, and Adequate ....................................................... 21

    a.    The costs, risk, and delay of trial and appeal ..................................................... 22

    b.    The method of distributing relief is effective .................................................. 25

    c.    The terms relating to attorneys' fees are reasonable...................................... 25

    d.    Any agreement required to be identified under Rule 23(e)(3)....................... 26

D.    The Proposed Settlement Treats Class Members Equitably ................................ 27

VII.    THE PROPOSED SETTLEMENT ADMINISTRATOR WILL PROVIDE ADEQUATE NOTICE....................................................................................27

VIII.    THE COURT SHOULD APPOINT CLASS COUNSEL ................................................29

IX.    CONCLUSION..........................................................................................................................30

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                         **PAGE(S)**

*Abubaker v. Dominion Dental USA, Inc.*,
   No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ...................... 14, 16, 17, 18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................ 14, 17

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) .................................................................................. 16

*Brown v. Transurban USA, Inc.*,
   318 F.R.D. 567 (E.D. Va. 2016) .............................................................................. 20

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) .................................................................................. 16

*Ealy v. Pinkerton Gov't Servs.*,
   514 F. App'x 299 (4th Cir. 2013) ........................................................................... 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019).......................... 22

*Gray v. Hearst Commc'ns, Inc.*,
   444 F. App'x 698 (4th Cir. 2011) ........................................................................... 17

*Grimm v. American Eagle Airlines, Inc.*,
   No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)............. 24

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................................................... 23

*Hapka v. CareCentrix, Inc.*,
   2018 WL 1871449 (D. Kan. Feb. 15, 2018) ............................................................ 18

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
   No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019) ................................ 15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)........................................................... 15, 16, 18, 19

*In re Brinker Data Incident Litig.*,
   No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................... 24

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013)................................................................................... 23

iv

*In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1059 (S.D. Tex. 2012) ................................................................. 18

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ................................................................................. 20

*In re NeuStar, Inc. Sec. Litig.*,
   No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ......................... 21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ....................................................... 18

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................................... 20

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017), reversed in part, 928 F. 3d 42 (D.C. Cir. June 21, 2019) ... 23

*In re: Capital One Consumer Data Sec. Breach Litig.*,
   MDL No. 1:19md2915 (AJT/JFA), (E.D. Va. February 7, 2022) ........................................... 14

*In re: Equifax Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. March 17, 2020),
   aff'd in relevant part 999 F.3d 1247 (11th Cir. 2021), cert. denied sub nom.
   *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom.
   *Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022) .......................... passim

*In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*,
   No. 115MD2627AJTTRJ, 2020 WL 5757504 (E.D. Va. Sept. 4, 2020) ................................ 26

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.*,
   *Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ................................. 21

*Jeffreys v. Commc'ns Workers of Am. AFL–CIO*,
   212 F.R.D. 320 (E.D. Va. 2003) ........................................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................. 28

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ....................................................................... 22

*Paz v. AG Adriano Goldschmeid, Inc.*,
   No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ............................ 24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 29

*Smith v. Triad of Ala., LLC,*
  No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ............ 24

*Soutter v. Equifax Info. Servs., LLC,*
  307 F.R.D 183 (E.D. Va. 2015) ............................................................................................. 17

*Stillmock v. Weis Markets, Inc.,*
  385 F. App'x 267 (4th Cir. 2010) .......................................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ............................................................................................................... 15

## STATUTES

15 U.S.C. §§ 45, *et seq.* ............................................................................................................. 12

California Consumer Protection Act of 2018, Cal. Civ. Code § 1798, *et seq.* ........................... 12

California Consumer Records Act, Cal. Civ. Code § 1798.80, *et seq.* ........................................ 12

## OTHER AUTHORITIES

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ........................ 13

7AA Charles Wright, Arthur Miller & Mary Kay Kane,
  *Federal Practice and Procedure* § 1779 (3d ed. 2005) ......................................................... 18

Federal Judicial Center, "Judges' Class Action Notice and Claims Process
  Checklist and Plain Language Guide" (2010) ....................................................................... 29

*Manual for Complex Litigation* (Fourth) § 21.632 (2004) .................................................. 13, 28

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 23

Fed. R. Civ. P. 23 ................................................................................................................. passim

Fed. R. Civ. P. 23(a) .................................................................................................................. 13

Fed. R. Civ. P. 23(a)(3) .............................................................................................................. 16

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 14, 17, 19, 27

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 11, 28

Fed. R. Civ. P. 23(e) .................................................................................................................. 13

Fed. R. Civ. P. 23(e)(A)(B)(i)-(ii) ............................................................................................. 13

Fed. R. Civ. P. 23(e)(1) .............................................................................................................. 27

Fed. R. Civ. P. 23(e)(1)-(2) ................................................................................. 19

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 14

Fed. R. Civ. P. 23(e)(2) ........................................................................... 19, 20, 22

Fed. R. Civ. P. 23(e)(2)-(3) ................................................................................. 27

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................. 21

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................. 27

Fed. R. Civ. P. 23(e)(3) ................................................................................. 19, 26

Fed. R. Civ. P. 23(g) ........................................................................................... 30

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ........................................................................ 30

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................. 29

Fed. R. Civ. P. 56 ................................................................................................ 23

Plaintiffs Jesse James Pagan, Lilyann Davila, and Jack Cowan ("Plaintiffs"), by and through their undersigned counsel, hereby move this Court to:

1.     Preliminarily approve the settlement described in the "Settlement Agreement" between Plaintiffs and Defendant Faneuil, Inc. ("Faneuil" or "Defendant"), and the attachments thereto, including the Short Notice, the Long Notice, the Claim Form, the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, and the [Proposed] Final Approval Order, attached to the Declaration of David K. Lietz, filed herewith in support of this Motion;

2.     Conditionally certify the Settlement Class;

3.     Appoint Plaintiffs Jesse James Pagan, Lilyann Davila, and Jack Cowan as Settlement Class Representatives;

4.     Appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and M. Anderson Berry of Clayeo C. Arnold, as Settlement Class Counsel;

5.     Approve a customary short form notice to be mailed to Settlement Class Members (the "Short Notice") in a form substantially similar to that attached as Exhibit 3 to the Settlement Agreement;

6.     Approve a customary long-form notice (the "Long Notice") to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit 2 to the Settlement Agreement;

7.     Direct Notice to be sent to the Settlement Class Members in the form and manner proposed as set forth in the Settlement Agreement and Exhibits 2 and 3 thereto;

8.     Appoint Postlethwaite & Netterville APAC ("P&N") as Claims Administrator;

9.     Approve the use of a Claim Form substantially similar to that attached as Exhibit 1 to the Settlement Agreement; and

1

10.   Set a hearing date and schedule for final approval of the Settlement and consideration of Settlement Class Counsel's motion for award of fees, costs, expenses, and service awards.

This Motion is based upon: (1) this Motion; (2) the Declaration of David K. Lietz, filed herewith; (3) the Settlement Agreement; (4) the Notices of Class Action Settlement (including the Long Notice and Short Notice); (5) the Claim Form; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the [Proposed] Final Approval Order and Judgment; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion The proposed settlement is fair, reasonable, and adequate, and meets all the criteria for preliminary approval under the Federal Rules of Civil Procedure. In support of this Motion, Plaintiffs hereby submit the following Brief in Support.

## I.   INTRODUCTION

This class action arises out of Defendant Faneuil, Inc.'s ("Faneuil" or "Defendant") alleged failure to safeguard the personally identifiable information ("PII") that it maintained regarding Plaintiffs Jesse James Pagan, Lilyann Davila, and Jack Cowan (collectively, "Plaintiffs," and, together with Defendant, the "Parties") and Settlement Class Members.[1] Plaintiffs allege that "a ransomware attack was discovered on August 18, 2021" and that Faneuil was the target of a criminal cyberattack in which the attackers accessed and copied certain company records, including records of past and present Faneuil employees ("Data Incident"). Faneuil sent, in February 2022, notification of the Data Incident to approximately 53,476 individuals. 8,534 of

---

[1] The capitalized terms used in this Motion shall have the same meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

those noticed resided in California at the time of the Data Breach. Plaintiffs allege to be among the group of individuals to whom Faneuil sent a notification. On April 26, 2022, Plaintiffs Jesse James Pagan and Lilyann Davilla filed a lawsuit asserting claims against Faneuil allegedly arising out of the Data Incident.  The case is titled *Pagan, et al. v. Faneuil, Inc*., Case No. 3:22-cv-279 (E.D. Va.). (ECF No. 1.)  On August 31, 2022, Plaintiffs amended the complaint, adding Plaintiff Cowan. (ECF No. 35) (collectively, the "Litigation").

Since filing the Complaint, the Parties engaged in numerous settlement discussions and have exchanged information regarding the Data Incident, including the size of the Settlement Class. After extensive discussion and protracted arms'-length negotiations, including an all-day mediation conducted by Hon. Wayne R. Andersen (Ret.) and weeks of follow-up negotiations, the Parties were able to reach an agreement on all the principal terms of settlement for this matter, subject to final mutual agreement on all necessary documentation. In the months following the agreement on the Settlement Terms, the Parties continued to negotiate the finer points of the Settlement Agreement and accompanying notice documents. The Settlement Agreement and various exhibits (the "S.A.") were finalized and signed in August 2022. The Parties have reached a settlement that is fair, adequate, and reasonable. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), the Declaration of Plaintiffs' Counsel David K. Lietz ("Lietz Decl."), and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the Parties'

Settlement Agreement, which is attached as Exhibit 2 to the Motion, and issue the [Proposed] Order Granting Preliminary Approval Of The Class Action Settlement, attached to Settlement Agreement, as Exhibit 4.

## II.    CASE SUMMARY

### A.    The Data Incident

In their Amended Class Action Complaint, Plaintiffs make the following allegations. "Faneuil provides a broad array of business process outsourcing solutions . . . and currently employs more than 5,500 professionals nationwide." Amended Complaint ("AC") ¶ 15. According to Faneuil's Data Breach Notification letter, with respect to data privacy, "we value the trust that individuals place in us with their information and we understand the importance of protecting the information that we maintain." *Id*. ¶ 16.  In the course of collecting PII from consumers and employees including Plaintiffs, Defendant promised to provide confidentiality and adequate security for customer and employee data through their applicable privacy policy and through other disclosures. *Id*. ¶ 17.  By obtaining, collecting, using and deriving benefits from Plaintiffs and Class Members' PII, Faneuil assumed legal and equitable duties and knew or should have known that it was responsible for protecting said PII from unauthorized disclosure. *Id*. ¶ 18.

Plaintiffs allege that Faneuil experienced a targeted cybersecurity incident that was discovered on August 18, 2021. *Id*. ¶ 24. Following the incident, Defendant conducted a review of its files and ultimately determined that there had been a data breach involving Plaintiffs' and Class Members' PII. *Id*. ¶ 25. Defendant's investigation and notification letter confirmed the worst: "the attackers accessed and copied certain company records, including records of past and present Faneuil employees." *Id*. ¶ 26. According to Defendant, the PII accessed and stolen in the Data

4

Breach included names, addresses at the time of employment, Social Security numbers (the holy grail for identity thieves), and email addresses. *Id.*

Plaintiff further allege that the Data Breach resulted in unauthorized access to the sensitive data of current and former Faneuil employees. *Id.* ¶ 28. Faneuil sent Plaintiffs notice of the Data Incident, dated February 1, 2022, informing them that their PII was "accessed and copied" by cybercriminals in the Data Incident. Id. ¶ 26.

Plaintiffs and the Settlement Class Members allege that they relied on Faneuil to keep their PII confidential and securely maintained and to use this information for business purposes only and to make only authorized disclosures of this information. *Id.* ¶ 19. Faneuil's wrongful actions and/or inaction and the resulting Data Incident allegedly exposed Plaintiffs and other Settlement Class Members to "a heightened present and continuing risk of fraud and identity theft." *Id.* ¶ 4. Faneuil denies any wrongdoing or liability.

### B.    Procedural Posture

On April 26, 2022, Plaintiffs Jesse James Pagan and Lilyann Davilla filed a lawsuit asserting claims against Faneuil allegedly arising out of the Data Incident. (ECF No. 1)  Defendant moved for and the Court granted an extension of time to respond to the Complaint.until June 15, 2022 (ECF No. 18). On June 15, 2022, Defendant filed its Answer and Affirmative Defenses and also filed a motion to dismiss. (ECF Nos. 22 and 23).  With leave of Court, Plaintiffs filed their response and opposition to the motion (ECF No. 30), and Defendant filed its reply (ECF No. 31).

With the motion to dismiss fully briefed, the Parties appeared before the Court on August 2, 2022, advising the Court that the Parties had reached a settlement.  The Court subsequently denied the motion to dismiss without prejudice as moot, and set a schedule for the Plaintiffs to file

a motion for preliminary approval. (ECF No. 33). On August 31, 2022, Plaintiffs amended the complaint, adding Plaintiff Cowan. (ECF No. 35.) (collectively, the "Litigation").

### C.    History of Negotiations

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case before the Hon. Wayne Andersen (Ret.). Judge Andersen (Ret.) is a retired federal judge and respected JAMS mediator with extensive experience in class action mediation generally and data breach mediations in particular. The mediation proceeded via ZOOM Video Conference on July 14, 2022. After a full day of arms-length negotiations, a significant exchange of information through Judge Andersen, and weeks of additional negotiations, the Parties agreed to the material terms of the Settlement.

Over the next several weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. The Settlement Agreement was finalized and signed by the Parties in August 2022.

## III.    SUMMARY OF SETTLEMENT

The proposed settlement will provide substantial relief to a proposed Settlement Class consisting of: "all persons whose Personally Identifiable Information was maintained on Faneuil's system that was compromised in the Data Breach, and who were sent a notice of the Data Breach." S.A. ¶ 1.30. The Settlement Class specifically excludes: (i) timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads nolo contendere to any such charge. *Id*.

The Settlement also proposes a "California Subclass" defined as "all persons residing in California whose Personally Identifiable Information was maintained on Faneuil's system that was compromised in the Data Breach, and who were sent a notice of the Data Breach." *Id.* ¶1.2

The Settlement Class includes approximately 53,476 individuals. Declaration of David K. Lietz ("Lietz Decl."), ¶ 31. The California Subclass includes approximately 8,534 persons. *Id.* ¶ 47.

**A.    Settlement Benefits**

The Settlement negotiated on behalf of the Settlement Class provides for three separate forms of monetary relief: (1) reimbursement for documented out-of-pocket expenses (such as fees for credit reports, unreimbursed bank fees, credit monitoring, or other identity theft insurance product, etc.) and lost time (up to 3 hours at $20 per hour), all of which are subject to a $500 per Class Member cap; (2) reimbursement of documented extraordinary expenses up to $5,000 per Class Member, and; (3) a cash payment for California Subclass Members. S.A. ¶¶ 2.1, 2.2 and 2.3.

1.    Documented Ordinary Expenses and Lost Time Reimbursement

The first category of payments is designed to provide reimbursement for ordinary out-of-pocket expenses related to the Data Incident, examples of which are set out in the Settlement Agreement. S.A. ¶ 2.1.   In addition, Settlement Class Members are also eligible to receive reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident (calculated at the rate of $20/hour). *Id.* The Class Member must merely attest that any claimed lost time was spent responding to issues raised by the Data Incident and provide a brief description of the activity or activities engaged in to address the Data Incident.   No other documentation is required.

Claims for ordinary out-of-pocket expense reimbursements, reimbursement for fees for credit reports, credit monitoring, or other identity theft insurance product, and lost time can be combined and are subject to a $500 cap per Class Member. *Id.*

### 2. Documented Extraordinary Expense Reimbursement

The second category provides for reimbursement of extraordinary expenses, up to $5,000 per Settlement Class Member, if the Settlement Class Member can show through the class process that the monetary loss: (i) is actual, documented, and unreimbursed, with documented proof of loss to be submitted with the claim; (ii) is more likely than not caused by the Data Incident; (iii) occurred between August 18, 2021 and the Claims Deadline; and (iv) is not already covered by one or more of the above-referenced reimbursed expenses; and the Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*

### 3. Cash Payment for California Subclass Members

Members of the California Subclass can submit a claim for an award of statutory damages of $50. S.A. ¶ 2.3. California Settlement Subclass Members must attest, under oath, that he or she was a resident of the State of California in August 2021. The Claims Administrator, at its discretion, may request documentation in the form of proof of California residence during August 2021 from a Settlement Class Member claiming the California Subclass payment.

### 4. Identity Theft Protection Services

In addition to the potential monetary benefits, Plaintiffs negotiated for significant additional identity theft protection services for the Settlement Class. All members of the Settlement Class are eligible for and will be provided, in connection with distribution of the Short Notice,

with credentials to redeem 24 months of free identity-theft protection, called "Financial Shield" by Pango (formally known as "Aura"). S.A. ¶ 2.4. The 24 months of free identity-theft protection services provided under this Settlement Agreement shall be in addition to any other identity-theft protection and/or credit monitoring services received by Settlement Class Members. "Financial Shield" includes, at least, the following, or similar, services:

a)      Up to $1 Million Dollars reimbursement insurance through AIG covering losses due to identity theft and stolen funds;

b)      Financial transaction monitoring, including monitoring of all financial accounts registered by the Settlement Class Member, such as credit card accounts, bank accounts (checking and savings) and investment accounts, for transactions exceeding selected thresholds;

c)      Continuous monitoring for high-risk transactions, including payday loans, wire transfers, and account openings, that involve the Settlement Class Member's personal information;

d)      Notification of attempts to use the Settlement Class Member's Social Security Number as part of an identity verification event, such as requesting a replacement credit or debit card; filing an insurance claim; updating personal information on an existing account; and/or opening a new account;

e)      Fictitious identity monitoring, which notifies the Settlement Class Member when his or her Social Security Number is being used in association with someone else's name and/or address;

f)      Online tax fraud monitoring and alerts, which monitors online income tax filings through TurboTax and alerts the Settlement Class Member if a tax return is filed using his or her Social Security Number;

g)      Home title monitoring, including monitoring properties identified by a Settlement Class Member and notifying the Settlement Class Member when an existing property title is changed, removed, or new titles are added to his or her name;

h)      Dark web monitoring, which continuously monitors the dark web for the Settlement Class Member's personal information;

i)      Public record monitoring, which monitors public records for address changes, automotive tickets, and arrests associated with the Settlement Class Member's name and Social Security number;

j)      Credit security freeze assistance, which provides the Settlement Class Member a central location to link to one of ten different consumer reporting agencies to freeze and unfreeze his or her credit files; and

k)      Lost wallet protection, which provides a customer support line where the Settlement Class Member can receive help in canceling and replacing lost credit cards.

5.      Security-Related Improvements

In addition to the foregoing settlement benefits, Faneuil has agreed to implement and maintain certain cybersecurity and business practice enhancements after the Data Incident and due to this Settlement. S.A. ¶ 2.5.1.

**B.      Class Notice and Settlement Administration**

The parties have jointly selected the well-regarded and highly experienced settlement administration firm P&N as the Claims Administrator. P&N's qualifications are outlined in the Supporting Declaration of Brandon Schwartz ("P&N Decl."), attached hereto as Exhibit 3. Notice will be given to the Settlement Class via individual notice, which will be given primarily by emailing and mailing the Short Notice (attached to the Settlement Agreement at Exhibit 3) by first-

class mail to the email and postal addresses of Settlement Class Members. P&N Decl. ¶ 9. The notice program is described more fully in the P&N Declaration and in Paragraph 3.2 of the Settlement Agreement and is the best notice practicable under the circumstances. *See* P&N Decl. ¶ 19.

A Long Notice (attached to the Settlement Agreement as Exhibit 2), and a copy of the Claim Form (attached to the Settlement Agreement as Exhibit 1) will also be posted on a Settlement Website established by the Claims Administrator, along with other important documents, such as the Preliminary Approval Order, the Settlement Agreement, the Amended Complaint, and any other materials agreed upon by the Parties and/or required by the Court, such as the motions for final approval and for attorneys' fees and expenses. S.A. ¶ 3.2(b) & (d). The Claims Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as the Settlement Agreement, upon request to Settlement Class Members. *Id*. ¶ 3.2(e). The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free help line shall be made available to provide Settlement Class Members with information relevant to this Settlement. S.A, ¶ 3.2(e).

The Claims Administrator has estimated that notice and administration costs will total approximately $99,969. P&N Decl., ¶ 18. Notice and claims administration will be paid for by Faneuil, separate and apart from any funds available to Settlement Class Members. S.A. ¶¶ 2.8. This is also a benefit to the Settlement Class.

### C.  Attorneys' Fees and Expenses

Plaintiffs will also separately seek an award of attorneys' fees not to exceed $225,000, which includes reimbursement of their reasonable costs and litigation expenses incurred. Settlement Class Counsel's fee request is well within the range of reasonableness for settlements of this nature and size. S.A. ¶ 7.2.

### D.  Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Plaintiffs will separately petition the Court for awards of $2,000 each (for a total payment of $6,000) in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A. ¶ 7.3. The amount requested here is presumptively reasonable and commonly awarded in settled class actions.

### E.  Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. ¶ 6.1. "Released Claims" are defined, *inter alia*, as:

> any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45, *et seq.*, and all similar statutes in effect in any states in the United States; violations of the California Consumer Protection Act of 2018, Cal. Civ. Code § 1798, *et seq.* and all similar state privacy-protection statutes; violations of the California Consumer Records Act, Cal. Civ. Code § 1798.80, *et seq.* and all similar statutes in effect in any states in the United States; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement,

declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of payment card data or other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.

S.A. ¶ 1.26.  Released Claims shall include Unknown Claims as defined in ¶ 1.35 of the Settlement

Agreement. Released Claims shall not include the right of any Settlement Class Member,

Settlement Class Counsel, or any of the Released Persons to enforce the terms of the settlement

contained in the Settlement Agreement and shall not include the claims of Settlement Class

Members who have timely excluded themselves from the Settlement Class. S.A. ¶ 1.26.

## IV.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement,

following notice to the class and certification of the class. *See* Fed. R. Civ. P.  23(e)(A)(B)(i)-(ii).

The preliminary approval stage provides a forum for the initial evaluation of a settlement, and

where no class has been previously certified, a determination as to whether a proposed settlement

class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d

ed. 1992) ("*Newberg*"). The *Manual for Complex Litigation (Fourth)* § 21.632 (2004) advises that

in cases presented for both preliminary approval and class certification, the "judge should make a

preliminary determination that the proposed class satisfies the criteria of Rule 23."

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so

numerous that joinder of all members is impracticable; (2) there must be questions of law and fact

common to the class; (3) the claims or defenses of the class representatives must be typical of the

claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

## V.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem*, 521 U.S. at 620. Such a decision should not be difficult here. Settlement classes are routinely certified in similar consumer data breach cases, including data breach class actions. *See, e.g., In re: Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA)*, Doc. 118 (E.D. Va. February 7, 2022); (Trenga, J.); *Abubaker v. Dominion Dental USA, Inc*., No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-

14

03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. March 17, 2020), aff'd in relevant part 999 F.3d 1247 (11th Cir. 2021), cert. denied sub nom. *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom. *Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### A.    The Rule 23(a) Requirements Are Satisfied.

Numerosity: The proposed Settlement Class consists of approximately 53,476 persons across the U.S., indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

Commonality: "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350 "Even a single common question will do." *Id*. at 359 (internal quotations omitted).

Here, all Settlement Class Members suffered the same injury—theft of their personal data in the Data Breach—and are asserting the same legal claims. These raise a number of common questions. For example, whether Faneuil failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. Faneuil's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

15

Other specific common issues include (but are not limited to):

- Whether Faneuil. had a duty to use reasonable care to safeguard Plaintiffs' and Class Members' PII;

- Whether Faneuil failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiffs and members of the Classes' PII from unauthorized release and disclosure, and;

- Whether proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiffs' and Class Members' PII from unauthorized disclosure.

These common questions, and others alleged by Plaintiffs in their operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23. Accordingly, common questions of law and fact abound. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *11-12; *Anthem*, 327 F.R.D. at 309.

Typicality: Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc*., 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67.

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the

same Data Breach and involve the same overarching legal theories.. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12.

Adequacy of Representation: "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representatives do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Ex. 2, Lietz Decl. ¶¶ 3-26.

**B.    The Rule 23(b)(3) Requirements Are Satisfied.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 569 (E.D. Va. 2016).

Predominance: Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs*., 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc*., 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc*., 385 F. App'x 267, 273 (4th Cir. 2010)

(finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Faneuil. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Superiority: "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of over 53,000 persons through individual litigation would obviously be

18

inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at \*14; *Anthem*, 327 F.R.D. at 315-16.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

## VI.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND DIRECT NOTICE TO THE SETTLEMENT CLASS.

When binding absent class members—as contemplated by the Settlement here—the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)" by finding that the Settlement is "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)-(2). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

Evaluation under these enumerated factors confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should issue notice of the Settlement to the Settlement Class.

## A.     The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries.

20

Further, Class Counsel has the experience and qualifications to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Ex. 2, ¶¶ 2-20*; see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B.      The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Parties' briefing of numerous legal issues; the length and difficulty of the negotiations; and the involvement of a highly experienced mediator, Judge Andersen. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to finally approve the Settlement.

### C.      The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $500 per Class Member for ordinary out-of-pocket losses, including up to 3 hours of lost time at $20 per hour; (2) reimbursement of documented extraordinary expenses up to $5,000 per Class Member; (3) a $50 cash payment for California Subclass Members. S.A. ¶¶ 2.1, 2.2 and 2.3, and; (4) two years of Financial Shield identity-theft protection services, available to all Settlement Class Members without making a claim. Faneuil's agreed Business Practice Changes are likewise an important

benefit flowing to Settlement Class Members, whose sensitive personal information may still reside at Faneuil.

Class Counsel, a group with a wealth of experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Ex. 2, ¶¶ 2-11. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### a. **The costs, risk, and delay of trial and appeal**.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Faneuil's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Operative Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believes in the merits of their case, they also understand that Faneuil asserts a number of potentially case-dispositive defenses. In fact, should litigation

continue, Plaintiffs would likely have to immediately survive a renewed motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data incident cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses Faneuil asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. See, e.g., *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was just announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages

methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data security incident case, establishing causation on a class-wide basis is rife with uncertainty.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). In one of the four significant data incident class actions mentioned above that have been certified on a national basis, this risk is very real. *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) is currently on appeal to the United States Court of Appeals for the Eleventh Circuit, and it is currently an open question whether the *Brinker* plaintiffs will maintain class certification. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### b.  The method of distributing relief is effective.

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim.

As an initial matter, noticing the Settlement Class of the available relief will be efficient and effective. The proposed Notice Plan includes dissemination of individual notice by email or postcard wherever possible. The total potential Settlement Class size is approximately 53,476 people, and contact information (to provide individual notice) is available for virtually all Settlement Class members. The Settlement Administrator expects that the individual notice effort alone will reach at least 90% of the Settlement Class (and likely higher). Ex. 3, ¶ 20. Therefore, Settlement Class Members will receive effective and efficient notice of the relief offered.

Because Settlement Class Members may make claims through a simple online form or by mail—and have the benefit of additional services for which they need take no action, including the identity protection services detailed above as well as the business practices Faneuil has agreed to—the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

### c.  The terms relating to attorneys' fees are reasonable.

Class Counsel will request an award of fees an award of attorneys' fees and litigation costs not to exceed $225,000.00.  The fees will be expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of expenses incurred in prosecuting and settling this case. Ex. 1, § 7.2. The fees will also be supported by a lodestar crosscheck. Under

the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses must be filed with the Court at least 14 days before the Objection deadline.

In the settlement negotiations, attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the terms of the Class relief. Ex. 1, ¶ 7.1. Faneuil has agreed that Settlement Class Counsel may make an application of fees and litigation costs not to exceed $225,000, Ex. 1, § 7.2, but the ultimate fee award will be determined in the discretion of the Court based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. Ex. 1, § 7.5. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses.

Class Counsel will request service awards of $2,000 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg*., No.115MD2627AJTTRJ, 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request. Ex. 1, § 7.5. The proposed Settlement is adequate under this factor.

### d.  Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is

adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no additional agreements. This factor weighs in favor of finding that the Proposed Settlement is adequate

### D.    The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Out-of-Pocket Losses, Lost Time, and Extraordinary Losses; this means that monetary compensation will be  apportioned in accordance with each claimant's injury. Importantly, there is no cap on these claims, meaning that no Settlement Class Member will obtain any greater relative benefit over another. While California Subclass Members are eligible for up to $50 in additional benefits, such benefits stem directly from the statutory benefits that they, as California Residents, would have access to, should the case proceed and be successful in litigation. Also, all Settlement Class Members will benefit from the Financial Shield benefit.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $2,000 award for their services on behalf of the class, this award is *less than* the $5,000 amount that any given Class Member can claim in reimbursements. This factor likewise supports a finding that the Court will be able to approve the proposed Settlement, and that class notice is appropriate.

## VII.    THE PROPOSED SETTLEMENT ADMINISTRATOR WILL PROVIDE ADEQUATE NOTICE.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint P&N as the Settlement Administrator and approve the Notice Plan submitted by P&N. See Ex. 5. The Notice Plan is uncomplicated. Faneuil will generate and provide to P&N a Class List within 14 days of the Preliminary Approval Order. Ex. 1, § 3.2(a). The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the *Manual for Complex Litigation*. *See* SA Exs A–B. Here, Faneuil has agreed to disseminate direct and individual notice, via first class mail to the last postal address provided to Faneuil by the Settlement Class Members, or to known email addresses. Lietz Dec. ¶ 64. The mailing will be completed only after the Settlement Administrator has run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS, and any notices returned as undeliverable will either be forwarded where a forwarding address is provided or, if time allows, will be resent after performance of a standard skip trace. *Id.* If email notices "bounce" or are otherwise undeliverable, those Class Members will be mailed a notice.

Not only has Faneuil agreed to provide Settlement Class Members with individualized notice via a direct mail or email, but all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. Lietz Dec. ¶ 66. The Settlement Administrator will also make a toll-free telephone number available by which Settlement Class members can seek answers to questions or request a notice or claim form be mailed to them at their address. *Id.* ¶ 66.

28

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* Agr. Exs. A–B.

P&N expects the notice to reach at least 90% of the identified Settlement Class Members, easily meeting the requirements of Rule 23 and due process. Ex. 3, ¶20; *see, e.g.,* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). When implemented, the Notice Plan will provide the best notice practicable under the circumstances. The Notice apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement). Accordingly, the Notice process should be approved by this Court.

## VIII.    THE COURT SHOULD APPOINT CLASS COUNSEL

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in

the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). As evidenced by the supporting declaration of David Lietz (Ex. 2), proposed Settlement Class Counsel meets these requirements. The Court should thus appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and M. Anderson Berry of Clayeo C. Arnold, as Settlement Class Counsel under Rule 23(g).

## IX.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of monetary compensation, identity theft protection, and increased data security safeguards. For these and the above reasons, and for all reasons for certification set forth above, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Dated:  September 1, 2022                    By:  */s/ Lee A. Floyd*

Lee A. Floyd, VSB #88459
Justin M. Sheldon, VSB #82632
**BREIT BINIAZAN, PC**
2100 East Cary St., Suite 310
Richmond, Virginia 23223
Telephone: (757) 622-6000
Facsimile: (757) 670-3939
Lee@bbtrial.com
Justin@bbtrial.com

Jeffrey A. Breit, VSB #18876
Kevin Biniazan, VSB #92019
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Telephone: (757) 622-6000
Facsimile: (757) 670-3939
Jeffrey@bbtrial.com
Kevin@bbtrial.com

David Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Ave. NW, Suite 440
Washington DC  20015
Phone: (866) 252-0878
Fax:  202-686-2877
dlietz@milberg.com

M. Anderson Berry (admitted *pro hac vice*)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

*Attorneys for Plaintiffs and the Proposed Settlement
Class*

31