UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JESSE JAMES PAGAN, LILYANN
DAVILA, and JACK COWAN, *on behalf of
themselves and all similarly situated persons*,

      Plaintiffs,

  v.

FANEUIL, INC.,

      Defendant.

**Civil Action No. 3:22-cv-297**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Jesse James Pagan, Lilyann Davila, and Jack Cowan, submit this memorandum in support of their Unopposed Motion for Final Approval of Class Action Settlement.

**I.**  **INTRODUCTION**

On October 3, 2022, this Court preliminarily approved a proposed class action settlement between Plaintiffs Jesse James Pagan, Lilyann Davila, and Jack Cowan ("Plaintiffs"), and Defendant Faneuil, Inc. ("Defendant" or "Faneuil"). The Settlement negotiated on behalf of the Class provides for three separate forms of monetary relief: (1) reimbursement for documented out-of-pocket expenses (such as fees for credit reports, unreimbursed bank fees, credit monitoring, or other identity theft insurance product, etc.) and lost time (up to 3 hours at $20 per hour), all of which are subject to a $500 per Class Member cap; (2) reimbursement of documented extraordinary expenses up to $5,000 per Class Member, and; (3) $50 cash payment for California Subclass Members in recognition of the superior statutory rights afforded under California law. S.A. ¶¶ 2.1-2.3.

In addition to the potential monetary benefits, Plaintiffs here negotiated for significant additional identity theft protection for the Settlement Class. All members of the Settlement Class are eligible to redeem 24 months of free identity-theft protection, called "Financial Shield" by Pango (formally known as "Aura"). SA ¶ 2.4.

Settlement Class Counsel has zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arms'-length negotiations, including a mediation conducted by the Honorable Wayne R. Anderson (Ret.), an extremely well-regarded JAMS mediator well-versed in data security incident litigation.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice was sent to 99% of the total Settlement Class, and 100% of the Settlement Class that passed address validation. Notice reached 89.8% of the Class, easily meeting the due process standard. *See* Declaration of Settlement Administrator ("Admin. Decl."), attached hereto as Exhibit 1, ¶ 14. The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. Out of 52,722 Settlement Class Members who were sent direct mail notice, only three sought to be excluded from the Settlement, and none have objected. The Claims Period ran through February 1, 2023.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' request for attorneys' fees, expenses, and service awards.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on September 1, 2022, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Plaintiffs also incorporate by reference Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, filed on December 13, 2022.

## III.    SUMMARY OF SETTLEMENT

### A. Settlement Benefits

The Settlement negotiated on behalf of the Class provides for three separate forms of monetary relief: (1) reimbursement for documented out-of-pocket expenses (such as fees for credit reports, unreimbursed bank fees, credit monitoring, or other identity theft insurance product, etc.) and lost time (up to 3 hours at $20 per hour), all of which are subject to a $500 per Class Member cap; (2) reimbursement of documented extraordinary expenses up to $5,000 per Class Member, and; (3) $50 cash payment for California Subclass Members in recognition of the superior statutory rights afforded under California law. S.A. ¶¶ 2.1-2.3 In addition to the potential monetary benefits, Plaintiffs here negotiated for significant additional identity theft protection for the Settlement Class. All members of the Settlement Class are eligible to redeem 24 months of free identity-theft protection, called "Financial Shield" by Pango (formally known as "Aura"). SA ¶ 2.4.

In addition to the foregoing settlement benefits, Faneuil agreed to implement and/or maintain certain reasonable steps to adequately secure its systems and environments. Faneuil also agreed to pay for the costs of notice and claims administration, which the Claims Administrator

has estimated will total approximately $99,969. (ECF No. 38-3 *see* P&N Decl.). This is also a significant benefit to the Settlement Class.

B. **Fees, Costs, and Service Awards**

Plaintiffs previously moved for, and Faneuil does not oppose, a combined attorneys' fee and expense award of $225,000. Plaintiffs also moved for and seek reasonable service awards in the amount of $2,000 for each named Plaintiff ($6,000 total).

C. **Notice and Claims**

Notice was carried out by the Settlement Administrator, P&N, pursuant to the Settlement Agreement and Preliminary Approval Order. Prior to mailing, all 53,476 Class Members' mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service. *See* Admin. Decl., ¶ 8. Postcard Notice was sent to the 52,722 Class Members that passed address validation. The Settlement Administrator then executed a skip trace on the 754 records that did not pass address validation and was able to mail the Postcard Notice to an addition 253 Settlement Class Members, meaning postcard notice was sent to 99% of the 53,476 members of the Settlement Class, and 100% of those who passed address verification. *Id*. ¶ 9. The Settlement Administrator also executed supplemental mailings for 3,365 Settlement Class Members for which an initial Postcard Notice was not deliverable, but for which the Settlement Administrator was able to obtain an alternative mailing address through (1) forwarding addresses provided by the USPS, (2) skip trace searches using the LexisNexis third-party vendor database, or (3) requests received directly from class members. *Id*. ¶ 9. Ultimately, notice reached a total of 48,007 (89.8%) Settlement Class Members, easily meeting the due process standard. *Id*. ¶ 14. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, the rights and options as a Class

4

Member and the dates by which to act on those options, and the date of the final approval hearing. *Id*. ¶ 7.

In addition to the direct mail notice, throughout the notice and claims process, P&N maintained a dedicated Post Office Box for the Settlement Program. Admin Decl. ¶ 10. This P.O. Box serves as a location for the USPS to return undeliverable program mail to P&N and for Settlement Class Members to submit paper claims, Exclusion Requests and other settlement-related correspondence. *Id*. The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement Website. P&N monitors the P.O. Box daily and uses a dedicated mail intake team to process each item received. *Id*.

On November 2, 2022, P&N published the Settlement Website, www.faneuildatasettlement.com. *Id*. ¶ 11. Visitors to the Settlement Website can download the Long Form Notice, the Claim form, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and Orders of the Court. *Id*. Visitors were also able to submit claims electronically, submit address updates electronically, and find answers to frequently asked questions ("FAQs"), important dates and deadlines, and contact information for the Settlement Administrator. *Id*. As of August 2, 2022, the Settlement Website has received 382 unique visitors and 1,233 page views. *Id*.

P&N also established a toll-free telephone number, 1-844-573-0047 (the "Toll-Free Number"), which is available twenty-four hours per day. *Id*. ¶ 12. Settlement Class Members can call and interact with an interactive voice response ("IVR") system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id*. The Toll-Free Number appeared in all Notices, as well as in multiple locations on the Settlement Website. The Toll-Free Number will remain active through the close

of this Settlement Program. *Id*. Finally, P&N established an email address, info@faneuildatasettlement.com, to provide an additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support. *Id*. ¶ 13.

The timing of the Claims Process was structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. Class Members were given 60 days from the date notice was mailed to file objections or to opt-out of the settlement. As of January 27, 2023, out of 53,476 Settlement Class Members, only three have sought to be excluded from the Settlement, and <u>none</u> have objected. *Id*. ¶¶ 16-17.

The Claims Period closed on February 1, 2023, with 1,323 claims filed through January 27, 2023. *Id*. ¶ 15. P&N continued to intake and analyze claims through the claims filing deadline of February 1, 2023. *Id*. Notably, out of the 1,323 claims filed, no less than 818 Class Members signed up for an email reminder for the Financial Shield benefit. See Declaration of David Lietz ("Lietz Decl."), attached hereto as Exhibit 2, ¶ 4. If those persons are added to the 952 persons who previously signed up for the credit monitoring offered and who will be receiving activation instructions for Financial Shield, that means that no less than 1,770 Settlement Class Members will be availing themselves of the identity theft protection offered. *Id*. at ¶ 4. At the current retail price of $12 per month, $144 per year, and $288 for the two-years offered in this Settlement, this means the Settlement delivered at least $509,760 in real value to the Settlement Class through the retail value of the Financial Shield service alone. *Id*. at ¶¶ 5-6.

## IV. LEGAL ARGUMENT

### A. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

6

This Court previously determined that the Settlement terms negotiated by the Parties in the matter are fair, reasonable, and adequate under Rule 23(e). The Court should now finally determine that the Settlement is fair, reasonable, and adequate and should be approved in a class judgement. In determining whether a settlement is fair, reasonable and adequate, the Court must consider whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Further, the Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube:* "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of

the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

Just as it did at the time of preliminary approval, evaluation under these factors confirms that the Settlement is fair, reasonable, and adequate.

### 1. The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as all other Settlement Class Members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Doc. 42, Order Granting Preliminary Approval. *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2. The Proposed Settlement Was Negotiated at Arm's Length.

The Court can conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Parties' vigorous pursuit of pre-mediation discovery and briefing and argument of numerous legal issues; the length and difficulty of the negotiations; and the involvement of an experienced mediator. *See In re*

*NeuStar, Inc. Sec. Litig.,* No. 1:14-CV-885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations).

### 3. The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Breach and is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $500 in Out-of-Pocket Losses and Lost Time spent dealing with the Data Breach (up to three hours at $20 per hour); reimbursement of documented extraordinary expenses up to $5,000 per Class Member; a $50 cash payment for California Subclass Members; and two years of identity protection, for which all members of the Settlement Class are eligible. Faneuil has also agreed to implement and maintain certain cybersecurity and business practice enhancements which are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside at Faneuil.

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

#### a. The Costs, Risk, And Delay Of Trial And Appeal.

As outlined in the preliminary approval motion, Plaintiffs faced significant risks and costs should they have continued to litigate the case. First, there was a risk that Plaintiffs'

claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and *Daubert* motions on damages methodologies, among other motions. Second, if Plaintiffs had prevailed on a motion for class certification, successfully defeated all the other objections and motions Defendant would have filed, and proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out- of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to Identity Theft Protection services, benefits that may not have been available at trial. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

        b. *The Method Of Distributing Relief Is Effective.*

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim.

Noticing the Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by direct mail, in the form of the Short Form postcard notice. This direct mail notice reached 89.8% of the Class. Moreover, counsel for the parties caucused during the course of the notice and claims period, and developed a supplemental notice that was sent via email on January 18, 2023 to those

persons who began filling out an online claim form, but who did not finish. Therefore, Settlement Class Members received effective and efficient notice of the relief offered.

Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

### c. The Terms Relating To Attorneys' Fees Are Reasonable.

Class Counsel has requested $225,000 in combined attorneys' fees and reimbursement for costs and expenses. In the previously filed Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 45), Plaintiffs' Counsel's fees request included $14,808.14 for litigation costs and expenses that were reasonably and necessarily incurred by counsel in connection with the Action. This request is on par with awards routinely granted by the Fourth Circuit and reflected a multiplier of 1.13 based on Plaintiffs' Counsel's lodestar of $199,164.70. As anticipated, additional time has been spent by Plaintiffs' Counsel since the motion for attorneys' fees was filed, and Plaintiffs' Counsel's total lodestar is now $242,862.19, representing a negative lodestar multiplier of 0.92. The fees and costs are factually well supported by the declarations of Class Counsel and Class Representatives. *See* Doc. 44, Motion for Attorney's Fees; Lietz Decl. ¶¶ 7-8. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award or the requested service awards. This factor supports approval of the proposed Settlement.

### d. Any Agreement Required To Be Identified Under Rule 23(e)(3).

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4. The Proposed Settlement Treats Class Members Equitably.

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement if they meet the requirements, including compensation for Out-of-Pocket Losses, compensation for time spent responding to the breach, and free identity defense. Moreover, all Settlement Class Members, even those who do not submit claims, benefit from Faneuil's Business Practice Commitments.

### 5. There is no opposition to the Settlement.

In assessing adequacy, the Court should consider the degree of opposition to the Settlement. *Jiffy Lube,* 927 F.2d at 158-59. After a far-reaching, extensive direct notice campaign, no Settlement Class Members submitted an objection. Also, after being sent CAFA notice and participating in a lengthy conference call with counsel for the Parties, no states' Attorney General has objected.

### B. THE COURT SHOULD FINALLY CERTIFY THE PROPOSED SETTLEMENT CLASS.

Settlement classes are routinely certified in consumer data breach cases.[1] There is nothing unique about this case that would counsel otherwise. This Court already found

---

[1] *See, e.g., Abubaker v. Dominion Dental USA, Inc.,* No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.,* No. l:16- cv-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.,* No. l:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector,* 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector,* 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

when it preliminarily approved the Settlement that it likely would certify the Settlement Class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision should be made final, for the reasons set forth in the Plaintiffs' Preliminary Approval Motion and Supporting Memorandum. *See* ECF 37 and 38,

      **C.**    **NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS AND RULE 23.**

The Court previously approved the Notice Plan proposed in this case and found it satisfied all requirements of due process and Rule 23. Doc. 42. The Notice Plan has been successfully implemented and reached approximately 89.8% percent of the Settlement Class by the individual notice efforts alone. *See* Admin. Decl. ¶ 14. The Settlement Website established, www.faneuildatasettlement.com, allows visitors to download the Long Notice, the Claim form, and Court documents such as the Class Action Complaint and Settlement Agreement, as well as allowing them to submit claims electronically, submit address updates electronically, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator. The website was broadly used by the Settlement Class, receiving 5,516 unique visitors and 11,145 page views. *Id* ¶ 11.

By having reached nearly 90% of the identified Settlement Class Members, the Notice Plan as implemented easily meets the requirements of Rule 23 and due process. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent

of the class). Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010). Thus, the Court should find that the Class received the best notice practicable under the circumstances in compliance with Rule 23 and the Due Process Clause. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

### D. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS.

#### A. Attorneys' Fees and Expenses.

As demonstrated by Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Expenses and for Class Representative Service Awards (Docs. 44, 45) (hereinafter, "Motion for Fees"), the requested attorneys' fees, costs, and expenses are reasonable and should be approved. Class Counsel requests a fee award which reflects a multiplier of 1.13 based on Plaintiffs' Counsel's lodestar of $199,164.70. This request includes $14,808.14 for litigation costs and expenses reasonably and necessarily incurred by counsel in connection with this litigation. As the Court is aware, and as the Motion for Fees and accompanying declaration of Class Counsel demonstrate, the effort of Class Counsel to achieve the result here was exceptional. *See* Doc. 45 (Memorandum in Support of Motion for Award of Attorney's Fees).

As of December 13, 2022, Class Counsel had devoted 297 hours to prosecuting this case, resulting in a total lodestar of $199,164.70. Doc. 45-1, Declaration of Anderson Berry Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees). Based on that lodestar amount, the requested fee reflected a multiplier of 1.13. *Id*. As of

14

December 13, 2022, Class Counsel incurred a total of $14,808.14 in expenses, which includes costs advanced in connection with mediation, legal research, copying and mailing, and other customary litigation expenses, bringing the total costs and expenses as of December 13, 2022 to $213,972.84, which is 95% of the requested award. As anticipated, since December 13, 2022, Class Counsel has accrued an additional 41.1 hours of work on this matter (27.9 hours by Milberg, and 13.2 hours by Arnold Law), representing an additional $28,329.30 in attorneys' fees. ($19,649.70 for Milberg, $8,679.60 by Arnold Law). *See* Lietz Decl. ¶ 7. In addition, Class Counsel incurred additional expenses of $560.05 in connection with legal research, copying and mailing, and other customary litigation expenses. *Id*. at ¶ 7. Thus, the total lodestar is now $242,862.19, with the final approval hearing still to come. Class Counsel has incurred and will continue to incur additional time reasonable litigation expenses associated with the settlement process, including travel expenses to Richmond for the final approval hearing. The total fees and costs incurred will ultimately be greater than the $225,000 in combined fees and costs requested, and there will be a slight negative lodestar multiplier (currently 0.92). *Id*. at ¶ 8. A negative lodestar multiplier denotes that the requested amount of fees is reasonable. *See In re Star Sci., Inc.*, No. 1:13CV0550 (AJT/JFA), 2016 WL 4820637, at *4 (E.D. Va. Aug. 3, 2016) (requested fee amount reasonable "as it reflects a negative lodestar.").

### B. Service Award

Plaintiffs have requested a $2,000 service award ("Service Awards") for each of the three Settlement Class Representatives. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act

15

as a private attorney general." *Berry v. Schulman,* 807 F.3d 600, 613 (4th Cir. 2015) (internal quotation omitted). In that case, the Fourth Circuit stated that such awards are "fairly typical **in** class action cases" and upheld $5,000 service awards as within the district court's discretion "because the Class Representatives acted for the benefit of the class." *Id.* (citation omitted).

Courts in this district routinely grant service awards of greater than the requested amount. *See Brown,* 318 F.R.D. at 578-79 (citing *Cappetta v. GC Servs. LP,* No. 3:08-cv-288(JRS) (E.D. Va. Apr. 27, 2011); *Henderson v. Verifications Inc.,* No. 3:1 l-cv-514 (E.D. Va. Mar. 13, 2013); *Pitt v. Kmart Corp.,* No. 3:1 l-cv-697 (E.D. Va. May 24, 2013); *Conley v. First Tennessee Bank,* No. l:10-cv- 1247 (E.D. Va. Aug. 18, 2011) (each of the foregoing cases awarded a $5,000 service award to one or more named plaintiffs); *Ryals, Jr. v. HireRight Solutions, Inc.,* No. 3:09-cv-625 (E.D. Va. Dec. 22, 2011) (awarding a $10,000 service award to each class representative)). Among the factors to be considered in determining the reasonableness of a service award are "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Manuel v. Wells Fargo Bank, Nat'l Ass'n,* No. 3:14CV238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. 2016) (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the Settlement Class Representatives have fulfilled their duties to the class, making the requested Service Awards appropriate. *See* Doc. 37, 38,44, 45 Specifically, the Plaintiffs made themselves available to Class Counsel to assist with the investigation into their claims. *Id.* The Plaintiffs assisted Counsel by providing information, which was necessary to the drafting of the complaint, and made themselves available throughout the

16

negotiation process to offer information and insight. *Id.* The Settlement Class Representatives also considered and approved the terms of the proposed Settlement as in the best interests of the Class after extensive review and discussion with Class Counsel. *Id.* The Court should therefore award Plaintiffs the reasonable and typical Service Awards in the amount of $2,000 each.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and granting the request for attorneys' fees, expenses, and service awards.

Dated: February 2, 2023                              Respectfully submitted,

                                                     /s/ *Lee Floyd*

                                                     Lee A. Floyd, VSB #88459
                                                     Justin M. Sheldon, VSB #82632
                                                     **BREIT BINIAZAN, PC**
                                                     2100 East Cary Street, Suite 310
                                                     Richmond, Virginia 23223
                                                     Telephone: (804) 351-9040
                                                     Facsimile: (804) 351-9170
                                                     Lee@bbtrial.com
                                                     Justin@bbtrial.com

                                                     Jeffrey A. Breit, VSB #18876
                                                     Kevin Biniazan, VSB #92019
                                                     **BREIT BINIAZAN, P.C.**
                                                     Towne Pavilion Center II
                                                     600 22nd Street, Suite 402
                                                     Virginia Beach, Virginia 23451
                                                     Telephone: (757) 622-6000
                                                     Facsimile: (757) 670-3939
                                                     Jeffrey@bbtrial.com
                                                     Kevin@bbtrial.com

                                                     David K. Lietz (admitted *pro hac vice*)

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Phone: (866) 252-0878
Fax: (202) 686-2877
dlietz@milberg.com

M. Anderson Berry (admitted *pro hac vice*)
Gregory Haroutunian
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be electronically filed in this case on the 2nd day of February, 2023 using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

/s/ Lee A. Floyd
Lee A. Floyd
